UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

Nº 20-CV-3848 (RRM) (RER)

———————————————

ADELFA DIAZ AND FLORIBERTO SUAREZ NAXI,
INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

RENE FRENCH CLEANERS, INC., RENE FRENCH CLEANERS II INC., DANIEL LEE, SUN YOUNG
YU, AND BYENG WOON LEE,

Defendants.

———————————————

**REPORT & RECOMMENDATION**

August 29, 2022

———————————————

**TO THE HONORABLE ROSLYNN R. MAUSKOPF**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Adelfa Diaz ("Diaz") commenced this action on August 21, 2020 (ECF No. 1

("Compl.")), against defendants Rene French Cleaners, Inc. (d/b/a Rene French Cleaners), Rene

French Cleaners II Inc. (d/b/a Rene French Cleaners), (together with Rene French Cleaners, Inc.,

"Corporate Defendants"), Daniel Lee, Byeng Woon Lee, and Sun Young Yu (collectively,

"Individual Defendants", and together with Corporate Defendants, the "Defendants"), for

violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.* and the New

1

York Labor Law §§ 190 and 650 *et seq.* (the "NYLL"). (ECF No. 9 ("Second Am. Compl."[1])).
Diaz amended her complaint to add fellow plaintiff Floriberto Suarez's ("Suarez") (and together
with Diaz, "Plaintiffs"), on December 11, 2020. (ECF No. 8). Currently before the Court is
Plaintiffs' motion for default judgment (ECF No. 24 ("Pl.'s Mot.")), which Your Honor has
referred to me for report and recommendation. (ECF Order dated 02/22/2022).

For the reasons set forth herein, I respectfully recommend that the motion be granted in part
and denied in part, and that liability be imposed on the Corporate Defendants but denied without
prejudice as to Individual Defendants in light of Plaintiffs' noncompliance with Local Rule
55.2(c). Alternatively, should Plaintiff properly serve the Motion for Default Judgment and a copy
of this Report and Recommendation upon the Individual Defendants, and file proof of compliance
with Local Rule 55.2(c), I respectfully recommend that the Motion be granted as to all Defendants.

## **BACKGROUND**

I. Factual Allegations

Defendants co-own, control, and operate a dry-cleaning business under the name Rene French
Cleaners, located at 214-07 Jamaica Avenue, in Queens Village, New York. (Second Am. Compl.
¶¶ 2−3, 19)). The Individual Defendants serve jointly as owners, managers, principals or agents of
Corporate Defendants and operate the dry-cleaning shop, and the Corporate Defendants operate
the shop as a "joint or unified enterprise[,]" with both corporations based at the same address and
both doing business under the name Rene French Cleaners. (*Id.*).

Diaz worked for Defendants as a laundry attendant at Rene French Cleaners from
approximately June 2015 to February 18, 2020. (*Id.* ¶¶ 1, 4, 16, 37−38). From approximately June

---

[1] Although Plaintiff has labeled this document "First Amended Complaint," it is the second Amended Complaint and
will be referred to as the Second Amended Complaint.

2015 until August 2019, Diaz usually worked eleven-hour shifts (typically 8 a.m. to 7 p.m.), six days a week, working sixty-six hours per week. (*Id.* ¶ 42). From approximately August 2019 until February 2020, Diaz worked eight-and-a-half hour shifts (typically 9:30 a.m. until 6 p.m.), six days a week, working fifty-one hours per week. (*Id.* ¶ 43).

Diaz was paid her wages in cash throughout most of her employment with Defendants. (*Id.* ¶ 44). Diaz was paid a fixed salary at the following rates: from approximately June 2015 to December 2015, she was paid $450 per week (*id.* ¶ 45); from January 2016 until June 2016, she was paid $500 per week (*id.* ¶ 46); from July 2016 to December 2016, she was paid $550 per week (*id.* ¶ 47); from January 2017 to June 2017, she was paid $600 per week (*id.* ¶ 48); from July 2017 to December 2019, she was supposed to be paid $700 per week (*id.* ¶ 49); and from January 2020 to February 2020, she was supposed to be paid $600 per week. (*id.* ¶ 50). However, from approximately October 2019 to February 2020, Diaz did not receive her full wages, and instead received just $100 per week for her work. (*Id.* ¶ 51; ECF No. 25-9).[2] In order to receive her wages, Diaz was instructed to sign a document that misrepresented the hours she worked per week. (*Id.* ¶ 53). Additionally, Defendants adjusted Diaz's paystubs to reflect inaccurate hours. (*Id.* ¶ 56).

Suarez worked for Defendants as a clothes ironer from approximately July 3, 2019, until on or about March 15, 2020. (*Id.* ¶¶ 58-59). During the time of his employment Suarez worked eleven-hour shifts (typically 8 a.m. to 7 p.m.), Monday through Friday, and a ten-hour shift (8 a.m. to 6 p.m.) on Saturdays, typically working sixty-five hours per week. (*Id.* ¶ 63). Suarez was paid a fixed

---

[2] Diaz alleges she does not get paid at all for her work during this time, but the supplemental filings contradict this assertion, showing that she was paid $100 weekly. (*See* ECF No. 25-9 ("Damages Chart"); ECF No. 25-7 ("Diaz Dec.")). Courts "resolve the inconsistencies in favor of the defendant." *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760 (CBA) (CLP), 2013 WL 6021668, at *7 (E.D.N.Y. Nov. 13, 2013) (citing *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD) (JO), 2012 WL 1100647, at *10 (E.D.N.Y. Feb. 17, 2012) *adopted in part by* 2012 WL 1107655 (Mar.30, 2012); *see also Espinoza v. La Oficina B. Corp.*, 20-CV-1237 (MKB) (RLM), 2022 WL 987429, at *1 (E.D.N.Y. Mar. 1, 2022) *adopted in part by* 2022 WL 985836 (Mar. 31, 2022) ("where a plaintiff's affidavits and testimony conflict in their estimates of hours worked, the Court adopts the lower estimate"). As such, the Court finds Diaz was paid $100 per week during the weeks at issue.

salary of $860 per week in a combination of check and cash until approximately November 2019. (*Id.* ¶¶ 64–66; Damages Chart). From November 2019 to March 15, 2020, Suarez received less than half of his agreed-upon wages. (Second Am. Compl. ¶¶ 65-66). Defendants told Suarez that he would receive the rest of his unpaid salary at a later date, but Suarez never received the other half of his wages. (*Id.* ¶ 66).

Plaintiffs were not required to keep track of their hours or use any system or device, such as a time clock, to record the hours they worked. (*Id.* ¶¶ 52, 68). Plaintiffs did not receive accurate statements of their wages, were not notified about overtime laws and rates, and were not given wage statements in English or in Spanish, their primary language, as required by law. (*Id.* ¶¶ 54–57, 69–71, 82–83). According to Plaintiffs, Defendants maintained a practice requiring Plaintiffs to "work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws." (*Id.* ¶ 72). Defendants did not keep accurate records of Plaintiffs' wages, did not pay an extra hour of wages on days when Plaintiffs worked more than ten hours, and failed to pay Plaintiffs in a timely manner. (*Id.* ¶¶ 5–8).

As part of their work, Plaintiffs regularly handled items that traveled in interstate commerce, including cleaning supplies and other products manufactured outside of New York state. (*Id.* ¶¶ 39, 60). Plaintiffs did not use independent judgment or discretion to complete their work. (*Id.* ¶¶ 40, 61). Individual Defendants all have "operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and control[] significant functions of Defendant Corporations." (*Id.* ¶¶ 22–24). The Individual Defendants "determine[] the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of

the employees, maintain[] employee records, and ha[ve] the authority to hire and fire employees."
(*Id*.)

II.  Procedural History

Diaz commenced this action on August 21, 2020 ("Compl."); and filed an amended complaint on December 11, 2020, adding Suarez. (ECF No. 8). Plaintiffs filed a Second Amended Complaint on September 3, 2021, adding Defendant Sun Young Yu. (Second Am. Compl.). The Individual Defendants were served a summons and a copy of the Second Amended Complaint at their actual place of business via personal service and mail service on October 20, 2021. (ECF No. 14, 14-1,14-4; *See* Fed. R. Civ. P. 4(e). The Corporate Defendants were served on October 22, 2021, via service at the Office of Secretary of State of New York. (ECF No. 14-2, 14-3). None of the Defendants answered or otherwise responded to the Second Amended Complaint despite proper service. As such, Plaintiffs requested certificates of default (ECF No. 21), and the Clerk of Court entered default against all Defendants on February 1, 2022. (ECF No. 23). Thereafter, Plaintiffs filed the instant motion for default judgment (ECF No. 24), which Your Honor referred to me for a report and recommendation. (ECF Order dated 02/22/2022).

Plaintiffs move for default judgment and seek damages for: (1) unpaid minimum wages under the FLSA and NYLL; (2) unpaid overtime under the FLSA and NYLL; (3) unpaid spread-of-hours under the NYLL; (4) statutory damages for failure to provide wage statements and notices under the NYLL; (5) liquidated damages under the NYLL; (6) costs and attorney's fees; and (7) prejudgment and post judgment interest. (ECF No. 25 ("Pl.'s Mem.") at 9–16).

**DISCUSSION**

I.   Default Judgment Legal Standard

Federal Rule of Civil Procedure 55 imposes a "two-step process for obtaining default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, where a party's failure to respond is "shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the plaintiff must then petition the court for an entry of default judgment pursuant to Rule 55(b)(2). *See Priestley*, 647 F.3d at 505.

When granting a default judgment, the court must accept as true the plaintiff's well-pleaded factual allegations. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court must ultimately determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim upon which relief can be granted. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981)). However, allegations as to damages need not be accepted as true; instead, a plaintiff must show with evidence that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158–59; Fed. R. Civ. P. 54(c). While the court may conduct hearings to determine damages, it need not do so, and instead may rely on "detailed affidavits," "documentary evidence," and the court's "personal knowledge of the facts, derived from presiding at trial." *Fustok v. ContiCommodity Serv.'s, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Notwithstanding the evidence submitted by plaintiffs, the default judgment is limited to the amount and type sought in the pleadings. *Miguel v Mi Bella Puebla Corp.*, 16-CV-01593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017), *adopted by* 2017 WL 4838761 (Oct. 24, 2017) (quoting Fed. R. Civ. P. 54(c)) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

II. <u>Defects in Service of Motion Pursuant to Local Rule 55.2(c)</u>

To obtain a default judgment, the moving party must follow the individual local rules for proper service of motion papers. *Miss Jones, LLC v. Viera*, 18-CV-1398 (NGG) (SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019), *adopted by* 2019 WL 955279 (Feb. 26, 2019) (quoting *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015)). "Service of the motion on non-appearing defendants is of particular importance, because 'mailing notice of such an application is conducive to both fairness and efficiency[.]'" *Miss Jones, LLC*, 2019 WL 926670, at *4 (quoting Committee Note, Loc. Civ. R. 55.2).

Local Rule 55.2(c) requires all papers submitted in support for a motion for default judgment "be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)." Loc. Civ. R. 55.2(c). Here, Plaintiffs served their motion for default judgment and supporting papers on the Individual Defendants at their actual place of business, 214-07 Jamaica Avenue, Queens Village, New York, 11428, instead of their last known residences as required by Local Rule 55.2(c). (*See* ECF No. 26).

"While the Court has significant discretion in this matter, Plaintiff's failure to comply with Local Rule 55.2 warrants denial of the motion, without prejudice to renewal upon demonstration of proper service." *Abbas v. Hestia Tobacco, LLC*, 18-CV-5151 (ENV) (RER), 2020 WL 9812912, at *3 (E.D.N.Y. Aug. 28, 2020); *see also Miss Jones*, 2019 WL 926670, at *4 (denying motion for default judgment where motion papers were served on individual defendants at their business address rather than residential address).

Accordingly, I respectfully recommend that the motion for default judgment be denied with respect to Individual Defendants without prejudice to renew upon proper service of their Motion and this Report and Recommendation their residential addresses.

III.   Liability Under FLSA and NYLL

Plaintiffs seek default judgment on their FLSA and NYLL claims. (Pl.'s Mem. at 9–16). To succeed on a claim under the FLSA and NYLL, plaintiffs must demonstrate that a non-exempt employer-employee relationship exists, *Liu v. Millenium Motors Sports, LLC*, No. 17-CV-6438 (RPK) (RER), 2021 WL 4268136, at *3 (E.D.N.Y. May 24, 2021), *adopted by* 2021 WL 3463193 (Aug. 6, 2021), and that the employer inadequately compensated the employees. *Santos v. Cancun and Cancun Corp.*, No. 21-CV-0192 (LDH) (RER), 2022 WL 1003812, at *3 (E.D.N.Y. Feb. 2, 2022) (citing *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2017 WL 3491964, at *2 (E.D.N.Y. July 19, 2017), *adopted by* 2017 WL 3493136 (Aug. 14, 2017)), *adopted by* (ECF Order dated 03/31/2022). Due to how closely aligned the FLSA and NYLL standards are, if the court finds liability under the FLSA, "it will routinely impose liability for a violation of the NYLL." *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH) (SIL), 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (Dec. 29, 2016).

A.   Defendants are Employers under the FLSA and NYLL

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "person" extends to both individuals and entities. 29 U.S.C. § 203(a). "An employer is subject to the FLSA if the plaintiff employee is either (1) 'engaged in commerce or in the production of goods for commerce,' (individual coverage), or (2) employed in an 'enterprise engaged in commerce or in the production of goods for commerce' whose 'annual gross volume of sales made or business done is not less than $500,000'" (enterprise coverage)." *Santos*, 2022 WL 1003812, at *4 (quoting 29 U.S.C. §§ 203(s)(1)(A)(i)-(ii), 206(a), 207(a)(1))). Enterprises are engaged in commerce when their employees "handle, sell, or otherwise work on goods or materials that have been moved in or

produced for commerce[.]" *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 25 (E.D.N.Y. 2015).

"Multiple businesses may constitute a single enterprise under the FLSA for purposes of establishing FLSA 'enterprise coverage.'" *Chuchuca v. Creative Customs Cabinets Inc.*, 13-CV-2506 (RLM), 2014 WL 6674583, at *6 (E.D.N.Y. Nov. 25, 2014). "A corporate employer is subject to FLSA liability "if [the employer] meets the criteria for either enterprise or individual coverage." *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR) (RER), 2021 WL 4464121, at *9 (quoting *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *4 (E.D.N.Y. July 24, 2020), *adopted by* 2020 WL 5810160 (Sept. 30, 2020)), *adopted by* 2021 WL 4463483 (Sept. 29, 2021).

Here, Defendants "had a gross annual volume of sales of not less than $500,000," and were "engaged in interstate commerce[,]" with Plaintiffs handling numerous goods that were produced outside of New York. (Second Am. Compl. ¶¶ 32–34, 39, 60). As such, enterprise coverage applies. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (finding enterprise coverage when the gross annual sales volume is above $500,000 and plaintiffs handled cleaning products produced outside New York). Since enterprise coverage has been found, the Corporate Defendants are employers subject to liability under the FLSA and NYLL. *See Palaghita*, 2021 WL 4464121, at *9 ("As Defendants need only meet the requirements for enterprise or individual coverage . . .[Plaintiff] has sufficiently established that Corporate Defendants were employers under the FLSA and NYLL standards.").

As to individuals, courts in the Second Circuit use the "economic-realities test when determining employer status." *Espinoza*, 2022 WL 987429, at *10. The test considers: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (internal quotations and citations omitted) (quoting *Carter v. Dutchess Cmty. Coll*., 735 F.2d 8, 12 (2d Cir. 1984)). Here, the Individual Defendants all had the authority to hire and fire employees, established employee schedules, determined wages and compensation for employees, and maintained employee records. (Second Am. Compl. ¶¶ 22–24). As such, Individual Defendants are employers and would be liable here if properly served. *See Santos*, 2022 WL 1003812, at *4 (finding individual defendants were employers under the FLSA and NYLL when "Plaintiff has alleged specific facts that all of the individual defendants participated in making hiring and firing decisions, supervised and controlled Plaintiff's work, determined rates and methods of employee pay, and . . . kept employment records").

B.  Plaintiffs are Non-Exempt Employees Under the FLSA and NYLL

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The NYLL defines an employee as "any individual employed or permitted to work by an employer in any occupation" with some exceptions. N.Y. Lab. Law § 651(5). While there are several categories of exempt employees who are not covered by the provisions for the FLSA, the types of employees who are covered by the FLSA include "(1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce,' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita*, 2021 WL 4464121, at *9 (quoting 29 U.S.C. § 207(a)(1)).

Here, Plaintiffs were employees of the Defendant Corporations. As discussed above, the Defendants were engaged in commerce or in the production of goods for commerce. Further, laundry and dry-cleaning workers are not exempt from FLSA coverage. *See Duchitanga v. 43 Ave*

*Top N' Quality Corp.*, No. 17-CV-1145 (LDH) (RLM), 2021 WL 7906539, at *21 (E.D.N.Y. Sept. 13, 2021) (granting default judgment on FLSA and NYLL claims for laundry workers). Therefore, Plaintiffs have demonstrated they are non-exempt employees under the FLSA and NYLL and have established a non-exempt employee-employer relationship.

### C.  Plaintiffs Were Inadequately Compensated

Pursuant to the FLSA and NYLL, employers are required to pay their employees "a certain minimum wage, as well as overtime wages of one-and-one-half times their regular rate of pay for all hours worked in excess of forty hours in any given week." *Santos*, 2022 WL 1003812, at *5 (citing 29 U.S.C. § 207(a), N.Y. Lab. Law § 651, 12 N.Y.C.R.R. § 142-2.2). To succeed on an FLSA or NYLL claim, Plaintiffs must provide sufficient evidence that they were paid less than the minimum wage, and to make a claim for unpaid overtime, they must provide evidence to "support a reasonable inference that they worked more than 40 hours per week." *Santos*, 2022 WL 1003812, at *4 (citing *Wen Jian Lu v. Taco Hut Place Inc.,* No. 15-CV-7147 (RER), 2017 WL 10186298, at *3 (E.D.N.Y. Apr. 28, 2017)).

Plaintiffs have made a sufficient showing that they both were inadequately compensated. Diaz alleged that she typically worked sixty-six or fifty-one hours per week but was paid a fixed salary without overtime. (Second Am. Compl. ¶¶ 42–51; Diaz Dec. ¶¶ 10–19). Suarez has shown that he typically worked sixty-five hours per week, but was paid a fixed salary without overtime. (Second Am. Compl. ¶¶ 63–66; ECF No. 35-8 ("Suarez Dec.") ¶¶ 10–13). Further, as shown below, both Plaintiffs were routinely paid less than the minimum wage. *See infra*.

\*\*\*

Accordingly, I respectfully recommend that Your Honor grant default judgment on Plaintiff's FLSA and NYLL claims and hold Defendants jointly and severally liable under the FLSA and NYLL[3]. *See Santos*, 2022 WL 1003812, at *5 (E.D.N.Y. Feb. 17, 2022).

## DAMAGES

Plaintiffs seek damages including: (1) unpaid minimum wages under the FLSA and NYLL; (2) unpaid overtime under the FLSA and NYLL; (3) unpaid spread-of-hours under the NYLL; (4) liquidated damages under the NYLL; (5) statutory damages for failure to provide wage statements and notices under the NYLL; (6) prejudgment and post judgment interest (7) attorneys' fees; and (8) costs. (Pl.'s Mem. at 9–16). For the reasons set forth below, I respectfully recommend that Diaz be awarded a total of $206,569.07 in damages, comprised of: $33,580.08 in unpaid minimum wages, $32,738.49 in unpaid overtime wages, $14,238.00 in unpaid spread-of-hours wages, $80,556.57 in liquidated damages, $10,000 in statutory damages; $35,455.93 in prejudgment interest, $19.86 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961; and that Suarez be awarded $49,200.04, comprised of: $8,607.30 in unpaid minimum wages, $6,281.25 in unpaid overtime wages, $2,512.50 in unpaid spread-of-hours wages, $17,401.05 in liquidated damages, $10,000 in statutory damages, $4,397.94 in prejudgment interest, $4.29 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961.

Plaintiffs have established Defendants' liability under both the FLSA and the NYLL, but "plaintiffs are not entitled to recover twice for the same injury." *Charvac v. M & T Project Managers of New York, Inc.*, 12-CV-05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y.

---

[3] As noted above, although liability is joint and several, the Individual Defendants have not been properly served under Local Rule 55.2 and I do not recommend imposing liability on the Individual Defendants until after they have been properly served with the Motion for Default Judgment and Report and Recommendation.

June 17, 2015) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.,* No. 08 Civ. 3725 (DC), 2010 WL 4159391, at \*2 n. 2 (S.D.N.Y. Sept. 30, 2010)) *adopted by* 2015 WL 5518348 (Sept. 17, 2015). "[W]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages[.]" *Id.* (quoting *Jiao v. Shi Ya Chen,* No. 03 Civ. 0165 (DF), 2007 WL 4944767, at \*17 (S.D.N.Y. Mar.30, 2007)). "Thus, to the extent that plaintiffs' allegations establish claims under both state and federal law, the law providing the greatest recovery will govern." *Id*. Here, the NYLL provides the greatest recovery for several reasons, including because it has a six-year statute of limitations, N.Y. Labor Law § 663(3), as opposed to the FLSA's two- or three-year statute of limitations (depending on whether the violation was willful), 29 U.S.C. § 255(a), and it allows plaintiffs to recover "one hour's pay at the basic minimum hourly wage rate" when a shift exceeds ten hours in one day, N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4. As such, I respectfully recommend awarding damages under the NYLL. *See Palaghita*, 2021 WL 4464121, at \*10 (recommending that Plaintiffs be awarded damages under NYLL because of longer recovery period).

As to the hours Plaintiffs worked, "in an FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Rodriguez*, 784 F. Supp. 2d at 126 (quoting *Ting Yao Lin v. Hayashi Ya II, Inc.,* No. 08 Civ. 6071 (SAS) (AJP), 2009 WL 289653, at \*3 (S.D.N.Y. Jan. 30, 2009), *adopted by* 2009 WL 513371 (Feb. 27, 2009)); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) ("where the employer has defaulted, [as here, the employees'] recollection and estimate of hours worked are presumed to be correct") (citations omitted). Here, Plaintiffs have submitted sworn declarations as to the hours they worked and the weekly salaries they were paid in addition to providing their schedules and estimated hours in their complaint. (Diaz Dec.; Suarez Dec.; Second Am. Compl. ¶¶ 42–51, 63–66). This is

sufficient evidence for the Court to calculate damages. *See Santos*, 2022 WL 1003812, at *6 ("Plaintiff has submitted a declaration that describes, inter alia, dates of employment, hours worked per week, and wages paid, which is sufficient to calculate damages.").

I.   Unpaid Wages

A.   Regular Hourly Rate

"[T]o calculate damages, the Court must first determine the 'regular hourly rate' received" by each Plaintiff. *Chopen v. Olive Vine, Inc*., 12-CV-2269 (NGG) (MDG), 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015) (citing 29 U.S.C. § 207(a)(1)), *adopted by* 2015 WL 1542082 (Mar. 31, 2015). "The regular hourly rate of an employee is determined by dividing his total renumeration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. If the employee is paid weekly "the regular hourly rate of pay . . . is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113; *see also Miguel*, 2017 WL 4838820, at *5 (citing *Bedasie v. Mr. Z Towing, Inc.*, 2017 WL 1135727, at *31 (E.D.N.Y. Mar. 24, 2017) ("The regular hourly rate of pay is obtained by dividing the total weekly pay by the total number of hours of work."); *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-CV-6789 (CBA) (LB), 2015 WL 5567073, at *8 (E.D.N.Y. Sept. 21, 2015) ("To calculate the effective wage paid for minimum wage purposes, courts in this Circuit divide weekly pay by the total number of hours worked in a given workweek.").

An employee's regular hourly rate "must be drawn from what happens under the employment contract." 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948)). In the absence of a contract, "the Court must infer the terms of [the parties'] agreement from the entire course of conduct, based on the testimonial and documentary evidence in the

record." *Chopen*, 2015 WL 1514390, at *6 (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002)). Where, as here, there is no contract and an employee's work schedule remains "relatively constant" through the course of their employment, "it is reasonable to infer from the course of conduct that the parties intended for plaintiff's weekly salary to include straight time pay for each hour worked." *Cazarez v. A. Farm & Food Inc.*, 15-CV-2666 (CBA) (RML), 2017 WL 3701687, at *4 (E.D.N.Y. May 31, 2017) (collecting cases and calculating plaintiff's regular hourly rate by dividing weekly salary by the total number of hours worked per week, including periods where plaintiff worked in excess of sixty hours per week), *adopted by* 2017 WL 3701479 (Aug. 25, 2017); *see also Zurita v. High Definition Fitness Ctr., Inc.,* No. 13-CV-4394 (CBA) (RML), 2016 WL 3619527, at *5 (E.D.N.Y. June 9, 2016) (finding no "evidence in the record suggesting that [plaintiff's] weekly salary was intended to compensate him just for the first forty hours that he worked" and calculating the regular hourly rate by dividing plaintiff's weekly pay by the number of hours worked per week), *adopted by* 2016 WL 3636020 (E.D.N.Y. June 29, 2016); *Chopen*, 2015 WL 1514390, at *6 (same); *Peralta v. M & O Iron Works, Inc.*, No. 12–CV–3179, 2014 WL 988835, at *8 (E.D.N.Y. Mar. 12, 2014) (same); *Man Wei Shiu v. New Peking Taste Inc.,* No. 11-CV-1175, 2014 WL 652355, at *12 (E.D.N.Y. Feb 19, 2014) (same).

Here, Plaintiffs' respective work schedules remained relatively constant during the course of their employment. Specifically, Diaz consistently worked sixty-six hours per week from June 2015 to August 2019, and consistently worked fifty-one hours per week thereafter until February 2020. (Second Am. Compl. ¶¶ 42–43; Damages Chart at 1).[4] Suarez consistently worked sixty-five hours

---

[4] Plaintiffs' Second Amended Complaint alleges that Diaz typically worked sixty-six hours per week "from approximately June 2015 until on or about August 2019," and worked fifty-one hours per week "from approximately August 2019 until on or about February 2020." (Second Am. Compl. ¶¶ 42–43). However, Plaintiffs' damages calculations provided in support of their Motion for Default Judgment calculate fifty-one hour weeks beginning September 2019. (Damages Chart at 1).

per week from July 2019 to March 2020. (*Id.* ¶ 63). During each relevant period of employment Defendants provided Plaintiffs a fixed weekly salary. (*Id.* ¶¶ 45–51, 65).[5] The Court may infer that Defendants intended Plaintiffs' weekly salary to include straight time pay for each hour worked, and did not contemplate an overtime premium for any hours worked in excess of forty hours per week. Accordingly, Plaintiffs' regular hourly rates for each of the relevant periods of employment are described in the chart below.

| Pay Period | Weeks Worked | Hours Worked / Week | Weekly Pay Rate (Actual) | Regular Hourly Rate (Weekly Pay Rate / Hours Worked Per Week) |
|---|---|---|---|---|
| **Plaintiff Diaz** | | | | |
| 6/1/2015– 12/31/2015 | 30 | 66 | $450 | $6.82 |
| 1/1/2016 – 6/30/2016 | 26 | 66 | $500 | $7.58 |
| 7/1/2016 – 12/31/2016 | 26 | 66 | $550 | $8.33 |
| 1/1/2017 – 6/30/2017 | 26 | 66 | $600 | $9.09 |
| 7/1/2017 – 12/31/2017 | 26 | 66 | $700 | $10.61 |
| 1/1/2018 – 12/31/2018 | 52 | 66 | $700 | $10.61 |
| 1/1/2019 – 8/31/2019 | 35 | 66 | $700 | $10.61 |
| 9/1/2019 – 9/30/2019 | 4 | 51 | $700 | $13.73 |
| 10/1/2019 – 12/31/2019 | 13 | 51 | $100 | $1.96 |
| 1/1/2020 – 2/18/2020 | 7 | 51 | $100 | $1.96 |
| **Plaintiff Suarez** | | | | |
| 7/3/2019 – 11/30/2019 | 21 | 65 | $860 | $13.23 |
| 12/1/2019 – 12/31/2019 | 4 | 65 | $400 | $6.15 |
| 1/1/2020 – 3/15/2020 | 11 | 65 | $400 | $6.15 |

---

[5] As noted above, the Court credits Defendants as having paid Diaz a fixed weekly salary of $100 during that time period. (*See* Damages Chart at 1).

The Second Amended Complaint alleges that Suarez was promised a "fixed salary of $860 per week" from July 3, 2019 until March 15, 2020, but that "from November 2019 until on or about March 15, 2020, Suarez received less than half of his agreed-upon weekly salary." (Second Am. Compl. ¶¶ 65–66). In support of their damages calculations for Suarez, Plaintiffs "credited" Defendants with $400 of weekly pay from December 1, 2019 through March 15, 2020. (Damages Chart at 1). For the purposes of calculating damages, the Court credits Defendants as having paid Suarez a fixed weekly salary of $400 during that time period.

B. <u>Minimum Wage</u>

Plaintiffs seek damages for unpaid minimum wages under the FLSA and NYLL. (Second Am. Compl. at 19). "Under both laws, plaintiffs are entitled to recover the difference between the effective hourly rate they were paid and the statutory minimum wage in New York." *Santos*, 2022 WL 1003812, at *5 (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 663)); *see also* 29 U.S.C. § 218(a) (explaining that federal minimum wage does not preempt higher state minimum wage). The Court calculates unpaid minimum wages owed to Plaintiffs "by subtracting the hourly rate paid to Plaintiffs each week from New York's minimum wage rate." *Rodriguez*, 784 F. Supp. 2d at 126. "That difference is then multiplied by . . . the number of hours plaintiff worked each week," which is then "multiplied by . . . the number of weeks falling within" the relevant pay period. *Peralta*, 2014 WL 988835, at *8. Based on the hourly rates explained above, the amount of unpaid minimum wages owed to Plaintiffs are calculated as follows:

| Pay Period | Applicable Statutory Minimum Wage[6] | Regular Hourly Rate | Difference (Statutory Minimum – Regular Hourly Rate) | Hours Worked / Week | Weeks Worked | Unpaid Minimum Wages[7] |
|---|---|---|---|---|---|---|
| **Plaintiff Diaz** | | | | | | |
| 6/1/2015– 12/31/2015 | $8.75 | $6.82 | $1.93 | 66 | 30 | $3,821.40 |
| 1/1/2016 – 6/30/2016 | $9.00 | $7.58 | $1.42 | 66 | 26 | $2,436.72 |
| 7/1/2016 – 12/31/2016 | $9.00 | $8.33 | $0.67 | 66 | 26 | $1,149.72 |
| 1/1/2017 – 6/30/2017 | $10.50 | $9.09 | $1.41 | 66 | 26 | $2,419.56 |
| 7/1/2017 – 12/31/2017 | $10.50 | $10.61 | $(0.11) | 66 | 26 | $(188.76) |
| 1/1/2018 – 12/31/2018 | $12.00 | $10.61 | $1.39 | 66 | 52 | $4,770.48 |
| 1/1/2019 – 8/31/2019 | $13.50 | $10.61 | $2.89 | 66 | 35 | $6,675.90 |
| 9/1/2019 – 9/30/2019 | $13.50 | $13.73 | $(0.23) | 51 | 4 | $(46.92) |
| 10/1/2019 – 12/31/2019 | $13.50 | $1.96 | $11.54 | 51 | 13 | $7,651.02 |
| 1/1/2020 – 2/18/2020 | $15.00 | $1.96 | $13.04 | 51 | 7 | $4,655.28 |
| **Total Minimum Wage Owed to Plaintiff Diaz:** | | | | | | |
| | | | | | | **$33,580.08** |
| **Plaintiff Suarez** | | | | | | |
| 7/3/2019 – 11/30/2019 | $13.50 | $13.23 | $0.27 | 65 | 21 | $368.55 |
| 12/1/2019 – 12/31/2019 | $13.50 | $6.15 | $7.35 | 65 | 4 | $1,911.00 |
| 1/1/2020 – 3/15/2020 | $15.00 | $6.15 | $8.85 | 65 | 11 | $6,327.75 |
| **Total Minimum Wage Owed to Plaintiff Suarez** | | | | | | |
| | | | | | | **$8,607.30** |

As noted in the chart above, from July 1, 2017 to December 31, 2017, and from September 1, 2019 to September 30, 2019, Diaz was paid above the statutory minimum wage. Accordingly, she is not entitled to recover unpaid minimum wages for those time periods. Diaz is, however, entitled to recover $33,580.08 for those periods in which her regular hourly rate was less than the statutory

---

[6] "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whichever statute provides the highest measure of damages. *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019) (citing 29 U.S.C. § 218(a)). At all relevant times, the state minimum wage exceeded the federal minimum wage. *See* 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2(a). Plaintiffs do not allege any facts regarding the number of employees working for Defendants, but calculate damages based on the minimum wage applicable to small employers based in New York City. (Damages Chart). Accordingly, the Court calculates unpaid minimum wages based on the applicable state minimum wage to small employers in New York City during each relevant pay period. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 146-1.2(a)(1)(ii).

[7] Unpaid Minimum Wages = (Statutory Minimum - Regular Hourly Rate) X Hours Worked per Week X Weeks Worked Per Pay Period).

minimum wage. Further, Suarez is entitled to recover $8,607.30, as his regular hourly rate was less than the statutory minimum wage for each pay period.

## C. Unpaid Overtime

Plaintiffs seek unpaid overtime wages under the FLSA and NYLL. (Second Am. Compl. ¶¶ 94–97, 103–106; *see also id.* at 19). Under both the FLSA and the NYLL, an employer must "pay [their] employees a [fifty] percent premium for their overtime hours—that is, the hours in excess of [forty] that they worked in each work week." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012) (citing 29 C.F.R. § 778.105; 12 N.Y.C.R.R. § 146-1.4); *see also* 29 U.S.C. § 207(a) (imposing overtime rate at "not less than one and one-half times the regular rate at which he is employed"); 12 N.Y.C.R.R. § 142-2.2 (requiring that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA).

Importantly, "[t]he FLSA provides that overtime rates shall be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater." *Bedasie*, 2017 WL 1135727, at *36 (citing 29 U.S.C. § 207(a); 29 C.F.R. § 778.107). Accordingly, where an employee's regular hourly rate "is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the 'regular rate.'" *Peralta*, 2014 WL 988835, at *7. But "even where employees are paid at a regular rate of pay that is significantly higher than the minimum wage, their overtime rate of pay is equal to one and one-half times their regular rate of pay for all hours worked above forty hours." *Bedasie*, 2017 WL 1135727, at *36; *see also Espinoza v. Indus. Glass & Mirror Inc.*, No. 16-CV-0064, 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016), *adopted by*, 2017 WL 65828 (Jan. 5, 2017) (holding that where plaintiff worked twenty hours of overtime per week and where plaintiff's regular rate of pay was $12 per

hour, plaintiff's overtime rate was $18 an hour and plaintiff was owed an additional $6 an hour in overtime wages, or $120 per week); *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *11 (E.D.N.Y. Mar. 18, 2016), *adopted by*, 2016 WL 2758272 (May 12, 2016) (holding that where plaintiff's regular hourly rate was $10.31, plaintiff's overtime rate was $15.47 and he was owed an "overtime premium" of $5.16 an hour for the hours he worked in excess of forty each week).

As noted above, Diaz has sufficiently alleged that she worked sixty-six hours per week from June 1, 2015 to August 31, 2019, and fifty-one hours per week from September 1, 2019 to February 18, 2020. (Second Am. Compl. ¶¶ 42-43; Diaz Dec. ¶¶ 10–11; Damages Chart). Similarly, Suarez has sufficiently alleged he worked sixty-five hours per week from July 2019 to March 2020. (Second Am. Compl. ¶ 63; Suarez Dec. ¶ 10; Damages Chart). Accordingly, both Plaintiffs are entitled to overtime wages for the hours worked in excess of a forty-hour work week during each pay period. (Second Am. Compl. ¶ 63; Damages Chart).

As Diaz was paid an hourly rate that was lower than the minimum wage during some weeks, and higher than the minimum wage during others, the Court "calculate[s] the overtime wages owed using the higher of the minimum wage or the actual rate of pay for [each] particular [pay period]." *Bedasie*, 2017 WL 1135727, at *37. Specifically, the Court uses Diaz's actual rate of pay for the periods July 1, 2017 to December 31, 2017, and September 1, 2019 to September 30, 2019, to calculate the overtime premium owed for those periods. Since Suarez's regular hourly rate was less than the statutory minimum for the entirety of his employment, the Court calculates the overtime premium owed using the required minimum wage as the "regular rate." *See Peralta*, 2014 WL 988835, at *7.

The Court therefore calculates the unpaid overtime premium owed to each Plaintiff for each pay period by dividing the greater of the statutorily mandated minimum wage or the actual regular hourly rate in half to determine what each Plaintiff was underpaid for each hour that he or she was entitled to receive time and a half pay. That sum is then multiplied by the number of overtime hours worked each week, and the number of weeks in each period. *See, e.g.*, *Chopen*, 2015 WL 1514390, at *9 (calculating unpaid overtime premium owed by multiplying one half of the minimum wage rate by the number of weeks per pay period and the number of overtime hours worked each week); *Coulibaly v. Millennium Super Car Wash, Inc*., No. 12-CV-04760 CBA CLP, 2013 WL 6021668, at *10 (E.D.N.Y. Nov. 13, 2013) (calculating hourly underpayment for overtime hours by dividing minimum wage in half). The Court's calculations are outlined in the chart below:

| Pay Period | Applicable Statutory Minimum Wage | Minimum Overtime Premium (Statutory Minimum Wage / 2) | Actual Regular Hourly Rate | Actual OT Premium (Actual Hourly Wage / 2) | OT Hours per Week | Weeks Worked | Unpaid OT Premium Wages[8] |
|---|---|---|---|---|---|---|---|
| **Plaintiff Diaz** | | | | | | | |
| 6/1/2015 – 12/31/2015 | $8.75 | $4.38 | $6.82 | $3.41 | 26 | 30 | $3,416.40 |
| 1/1/2016 – 6/30/2016 | $9.00 | $4.50 | $7.58 | $3.79 | 26 | 26 | $3,042.00 |
| 7/1/2016 – 12/31/2016 | $9.00 | $4.50 | $8.33 | $4.17 | 26 | 26 | $3,042.00 |
| 1/1/2017 – 6/30/2017 | $10.50 | $5.25 | $9.09 | $4.55 | 26 | 26 | $3,549.00 |
| 7/1/2017 – 12/31/2017 | $10.50 | $5.25 | $10.61 | $5.31 | 26 | 26 | $3,589.56 |
| 1/1/2018 – 12/31/2018 | $12.00 | $6.00 | $10.61 | $5.31 | 26 | 52 | $8,112.00 |
| 1/1/2019 – 8/31/2019 | $13.50 | $6.75 | $10.61 | $5.31 | 26 | 35 | $6,142.50 |
| 9/1/2019 – 9/30/2019 | $13.50 | $6.75 | $13.73 | $6.87 | 11 | 4 | $302.28 |
| 10/1/2019 – 12/31/2019 | $13.50 | $6.75 | $1.96 | $0.98 | 11 | 13 | $965.25 |
| 1/1/2020 – 2/18/2020 | $15.00 | $7.50 | $1.96 | $0.98 | 11 | 7 | $577.50 |
| **Total Unpaid Overtime Wages:** | | | | | | | **$32,738.49** |
| **Plaintiff Suarez** | | | | | | | |
| 7/3/2019 – 11/30/2019 | $13.50 | $6.75 | $13.23 | $6.62 | 25 | 21 | $3,543.75 |
| 12/1/2019 – 12/31/2019 | $13.50 | $6.75 | $6.15 | $3.08 | 25 | 4 | $675.00 |
| 1/1/2020 – 3/15/2020 | $15.00 | $7.50 | $6.15 | $3.08 | 25 | 11 | $2,062.50 |
| **Total Unpaid Overtime Wages:** | | | | | | | **$6,281.52** |

Based on the above calculations, I respectfully recommend that the Court award Diaz $32,738.49 and Suarez $6,281.25 for total unpaid overtime wages.

---

[8] Unpaid OT Premium Wages = (Greater of the Minimum Overtime Premium or Actual Overtime Premium) X Overtime Hours Worked per Week X Weeks Worked Per Pay Period)

D. <u>Spread of Hours Pay</u>

Plaintiffs seek spread-of-hours pay under the NYLL. (Second Am. Compl. ¶¶ 107–110; *see also id.* at 19). Under the NYLL, employees are entitled to an additional hour of pay at the minimum wage rate before allowances for each day an employee's spread of hours exceeded ten hours. 12 N.Y.C.C.R. § 142-2.4; *see also Santos*, 2022 WL 1003812, at *7 (quoting *Fermin*, 93 F. Supp. 3d at 45) ("Under the NYLL, 'an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.'"); *Rodriguez*, 784 F. Supp. 2d at 126 (awarding Plaintiffs spread of hours damages by "multiplying the number of days worked per year by the minimum wage rate for that period").

From June 2015 to August 2019, Diaz typically worked eleven hours per day, six days per week. (Second Am. Compl. ¶ 42; Diaz Dec. ¶ 10). From July 2019 to March 2020, Suarez worked eleven hours per day, five days per week. (Second Am. Compl. ¶ 63; *see also* Suarez Dec. ¶ 10).[9] Accordingly, both Plaintiffs are entitled to one extra hour of pay at the then-applicable minimum wage for each day that they worked more than ten hours per day.

The Court calculates the spread of hours pay owed to each Plaintiff as follows:

---

[9] Plaintiffs' damages calculations incorrectly credit Diaz with six "spread of hours days" per week per pay period, rather than the five days per week as alleged in the Second Amended Complaint. (Damages Chart at 1). The Court uses the five spread of hours days per week alleged in the Second Amended Complaint in order to calculate the spread of hours wages owed.

| Pay Period | Weeks Worked | Spread of Hours Days / Week | Applicable Minimum Wage | Spread of Hours Wages Owed[10] |
|---|---|---|---|---|
| **Plaintiff Diaz** | | | | |
| 6/1/2015– 12/31/2015 | 30 | 6 | $8.75 | $1,575.00 |
| 1/1/2016 – 6/30/2016 | 26 | 6 | $9.00 | $1,404.00 |
| 7/1/2016 – 12/31/2016 | 26 | 6 | $9.00 | $1,404.00 |
| 1/1/2017 – 6/30/2017 | 26 | 6 | $10.50 | $1,638.00 |
| 7/1/2017 – 12/31/2017 | 26 | 6 | $10.50 | $1,638.00 |
| 1/1/2018 – 12/31/2018 | 52 | 6 | $12.00 | $3,744.00 |
| 1/1/2019 – 8/31/2019 | 35 | 6 | $13.50 | $2,835.00 |
| **Total Unpaid Spread of Hours Wages Owed:** | | | | |
| | | | | **$14,238.00** |
| **Plaintiff Suarez** | | | | |
| 7/3/2019 – 11/30/2019 | 21 | 5 | $13.50 | $1,417.50 |
| 12/1/2019 – 12/31/2019 | 4 | 5 | $13.50 | $270.00 |
| 1/1/2020 – 3/15/2020 | 11 | 5 | $15.00 | $825.00 |
| **Total Unpaid Spread of Hours Wages Owed:** | | | | |
| | | | | **$2,512.50** |

Based on these calculations, I respectfully recommend awarding Diaz $14,238 in unpaid spread of hours wages, and awarding Suarez $2,512.50 in unpaid spread of hours wages under the NYLL.

II. Liquidated Damages

Plaintiffs seek an award of liquidated damages under both the FLSA and NYLL. (Second Am. Compl. at 20). A plaintiff may recover liquidated damages for unpaid wages under either the NYLL or the FLSA. Under the FLSA, a plaintiff can collect "liquidated damages awards equaling one-hundred percent of wages due," *Cabrera*, 412 F. Supp. 3d at 184 (citing 29 U.S.C. § 260), unless "the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir.

---

[10] Spread of Hours Wages Owed = Weeks Worked X Spread of Hours Days per Week X Applicable Minimum Wage.

2008) (quoting 29 U.S.C. § 260). The NYLL similarly permits recovery of "liquidated damages 'equal to one hundred percent of the total amount of the wages found to be due,' unless the employer provides a good faith basis for believing he or she was in compliance with the law." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017) (quoting N.Y. Lab. L. §§ 198(1-a), 663(1); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016)). "Both laws give the court discretion in awarding liquidated damages when the employer has acted in good faith, however, an employer who defaults, as Defendants have, fails to make a showing of good faith." *Santos*, 2022 WL 1003812, at *7 (citing *Palaghita*, 2021 WL 4464121, at *11; *Fermin*, 93 F. Supp. 3d at 47); *see also Chopen*, 2015 WL 1514390, at *10 ("As the defendants have here defaulted, they have not shown they acted in good faith."). Accordingly, Plaintiffs are entitled to recover liquidated damages.

As discussed above, Plaintiffs may not recover liquidated damages under both the FLSA and NYLL. Accordingly, I respectfully recommend that the Court award Plaintiffs one-hundred percent of the minimum wage, overtime, and spread-of-hours damages that they are entitled to under the NYLL, amounting to a liquidated damages award of $80,556.57 for Diaz,[11] and a liquidated damages award of $17,401.05 for Suarez.[12]

III. <u>NYLL Statutory Damages</u>

Plaintiffs seek statutory damages under the NYLL for wage-notice and wage statement violations. (Second Am. Compl. at 20; Damages Chart).

---

[11] Unpaid Minimum Wages ($33,580.08) + Unpaid Overtime Wages ($32,738.49) + Unpaid Spread of Hours Wages ($14,238.00) = Liquidated Damages ($80,556.57).

[12] Unpaid Minimum Wages ($8,607.30) + Unpaid Overtime Wages ($6,281.25) + Unpaid Spread of Hours Wages ($2,512.50) = Liquidated Damages ($17,401.05).

Under § 195(1) of the NYLL, employers must provide their employees with notice, "in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, the rate of pay and basis thereof[.]" N.Y. Lab. Law § 195(1). If the employee is not provided this wage notice within "ten business days of his first day of employment" the employee may recover in civil damages, fifty dollars for each workday that this violation occurred, up to a maximum of five thousand dollars. N.Y. Lab. Law § 198(1-b). An employer must also provide its employees "with every payment of wages" a wage statement listing "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; [and] rate or rates of pay and basis thereof[.]" N.Y. Lab. Law § 195(3). If an employee does not receive such wage statements, "he or she shall recover in a civil action damages of two hundred fifty dollars for each workday that the violations occurred" up to a maximum of five thousand dollars. N.Y. Lab. Law § 198(1-d).

Here, Plaintiffs allege that they were not provided with the requisite wage notice in English or in their primary language, Spanish, and were not provided with accurate wage statements as required by the NYLL. (Second Am. Compl. ¶¶ 55, 57, 70–71; Diaz Dec. ¶¶ 21–22; Diaz Dec. ¶¶ 16–17). Plaintiffs' allegations sufficiently show that Defendants were not compliant with the NYLL wage notice and wage statement requirements for more than 100 days. *See Santos*, 2022 WL 1003182, at *7–8 (finding plaintiffs' complaint sufficiently showed wage notice and wage statement violations under NYLL); *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-3597 (EK) (ST), 2021 WL 3888067, at *9 (E.D.N.Y. July 7, 2021) (same), *adopted by* 2021 WL 3884193 (Aug. 31, 2021).

Since Defendants failed to provide Plaintiffs with the required wage notice for more than 100 days, and failed to provide Plaintiffs with the required wage statements for more than twenty days,

I respectfully recommend that the Court award each Plaintiff the maximum statutory damage award of $5,000 for violations of NYLL § 195(1) and $5,000 for violations of NYLL § 195(3), for a total of $10,000 in statutory damages each.

## IV.  Pre- and Post-Judgment Interest

Plaintiffs request pre- and post-judgment interest on damages. (Second Am. Compl. at 20). Under the NYLL, plaintiffs may recover pre-judgment interest on unpaid minimum wages, overtime wages, and spread-of-hours damages, but not on liquidated or statutory damages. *See, e.g.*, *Santos*, 2022 WL 1003812, at *8; *Palaghita*, 2021 WL 4464121, at *12; *see also Calle v. Yoneles Enter., Inc*., No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652, at *9 (E.D.N.Y. Oct. 24, 2017), at *17 & n.22 (pre-judgment interest appropriate for withheld wages, overtime wages and spread-of-hours damages, but not liquidated or statutory damages). In New York, pre-judgment is calculated at "the rate of nine per centum annum." N.Y. C.P.L.R. § 5004, and "may be calculated from a single reasonable intermediate date, which, in cases such as this, is sensibly the midpoint of a plaintiff's employment." *Palaghita*, 2017 WL 4464121, at *12 (citing *Cabrera*, 412 F. Supp. 3d at 186; *Fermin*, 93 F. Supp. 3d at 49); *see also Martinez,* 2017 WL 5033650, at *24 (quoting N.Y. C.P.L.R. § 5001(b)) ("Where . . . violations of the NYLL occur over an extended period, courts calculate prejudgment interest from a 'single reasonable intermediate date.'"). The midpoint date is typically "the midway point between when 'plaintiff[s] began and ceased working for the defendant[s.]" *Santillan*, 822 F. Supp. 2d at 298 (alterations in original) (quoting *Pavia v. Around The Clock Grocery, Inc.,* No. 03-CV-6465 (ERK) (CLP), 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005)); *see also Martinez*, 2017 WL 5033650, at *24 (calculating prejudgment interest from the midway point of each plaintiff's employment).

Based on these standards, the Court will calculate prejudgment interest owed to Diaz from the date of October 9, 2017, which is the midpoint between her start date of June 1, 2015 and her end date of February 18, 2020 (Second Am. Compl. ¶¶ 16, 37; Diaz Dec. ¶ 6), and will calculate prejudgment interest owed to Suarez from the date of November 8, 2019, which is the midpoint between his start date of July 3, 2019 and his end date of March 15, 2020 (Second Am. Compl. ¶ 18, 58 ; Suarez Dec. ¶ 6).

Accordingly, I respectfully recommend that Diaz be awarded $35,455.93 in prejudgment interest, plus $19.86 per diem until the date that judgment is entered,[13] and that Suarez be awarded $4,397.94 in prejudgment interest, plus $4.29 per diem until the date that judgment is entered.[14]

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961. Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co., Inc. v. Loc. 137 Sheet Metal Workers Intl. Assn.*, 852 F.3d 217, 223 (2d Cir. 2017) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also Fermin*, 93 F. Supp. 3d at 53 (finding post-judgment interest is mandatory). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

---

[13] Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) X (.09/365) X (number of days from midpoint date to the date the Clerk of the Court enters judgment).

As to Diaz, pre-judgment interest is calculated to date as follows: Total Compensatory Damages ($80,556.57) X (.09/365) X (1,785 [days between midpoint date 10/9/2017 and 8/29/2022]) = $35,455.93.

Per diem interest is calculated as follows: Total Compensatory Damages ($80,556.57) X (0.09 / 365) = $19.86 per diem.

[14] As to Suarez, pre-judgment interest is calculated to date as follows: Total Compensatory Damages ($17,401.05) X (.09/365) X (1,025 [days between midpoint date 11/8/2019 and 8/29/2022]) = $4,397.94.

Per diem interest = $17,401.05 X (0.09 / 365) = $4.29 per diem.

28

of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a).

Accordingly, I respectfully recommend that Plaintiffs be awarded post-judgment interest at the statutory rate.

V.   Automatic Increase for Failure to Pay

Plaintiffs claim that the total amount of the judgment should automatically increase by fifteen percent if it is not paid within ninety days after the judgment is entered. (Second Am. Compl. at 20; *see also* Pl.'s Mem. ¶ 91).

The NYLL states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law §§ 198(4); 663(4).

Some courts in this District have applied the automatic increase penalty contemplated by NYLL Sections 198(4) and 663(4) to judgments awarding damages based on violations of the New York Labor Law in lieu of federal post-judgment interest pursuant to 28 U.S.C. § 1961. *See, e.g., Santana v. 82 Food Corp.*, No. 19-CV-4733 (SMG), 2020 WL 9814100, at *12 (E.D.N.Y. July 10, 2020) (granting request for automatic increase under NYLL Sections 198(4) and 663(4) as "post-judgment interest" where "[d]amages have been awarded only under the NYLL."); *Saavedra v. Twin Kitty Bakery Corp.*, No. 18-CV-932 (PKC) (PK), 2021 WL 1394487, at *17 (E.D.N.Y. Feb. 16, 2021) (recommending automatic fifteen percent increase where "all of [p]laintiffs' damages are attributable to the NYLL" without mentioning "post-judgment interest" or discussing application of 28 U.S.C. § 1961), *adopted by* 2021 WL 1169321 (Mar. 29, 2021); *Montellano-*

*Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ) (RLM), 2016 WL 4147143, at *8 (E.D.N.Y. Aug. 4, 2016) (same). Other courts in this District have simultaneously awarded post-judgment interest under 28 U.S.C. § 1961 and have held the automatic increase penalty under the NYLL to apply. *See e.g., Jacome v. Optical 49, Inc*., No. 20-CV-02615 (DG) (PK), 2021 WL 3375134, at *13 (E.D.N.Y. July 9, 2021) (recommending both post-judgment interest at the federal statutory rate and the NYLL penalty), *adopted by* 2021 WL 3373130 (Aug. 3, 2021); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc*., No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *10, *13 (E.D.N.Y. May 11, 2021) (same), *adopted by* 2021 WL 2223275 (June 2, 2021); *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14, *16 (E.D.N.Y. Apr. 7, 2020) (same); *Saldana v. New Start Grp., Inc*., No. 14-CV-4049 (CBA) (RLM), 2016 WL 3683530, at *5 (E.D.N.Y. July 6, 2016) (same).

However, one judge in this District has held that the NYLL penalty can only apply to judgments entered by a New York state court, and does not apply to federal judgments. *See Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2022 WL 1460272, at *3 (E.D.N.Y. May 9, 2022); *Quesada v. Hong Kong Kitchen Inc.*, No. 20-CV-5639 (BMC), 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021). In *Quesada*, the court reasoned that "once a federal judgment has been entered, all claims, state and federal, are merged into it, and any state court provisions addressed to the judgment no longer apply. For example, any post-judgment interest will accrue at the much lower federal rate . . . not the rate under N.Y. C.P.L.R. § 5004 of 9%." *Quesada*, 2021 WL 861800, at *2. Similarly, in *Chen*, the court specified that "[t]he fact that under NYLL § 198(4), an increased percentage of the judgment is intended to induce payment does not change [the applicability of 28 U.S.C. § 1961]" and noted that "special state legislation like NYLL § 198(4) is not a sufficient reason to depart from the 'inflexible, unitary rule' by which post-judgment accruals

are applied to all federal judgments." *Chen*, 2022 WL 861800, at *3 (quoting *Carte Blanche (Singapore) Ltd. v. Carte Blanche International, Ltd.*, 888 F.2d 260, 270 (2d Cir. 1989)).

Especially given the "mandatory" nature of post-judgment interest, *see Tru-Art Sign Co., Inc.*, 852 F.3d at 223; *see also Fermin*, 93 F. Supp. 3d at 53, I agree that the late-payment penalty contemplated by NYLL §§ 198(4) and 663(4) should not be imposed in lieu of a post-judgment interest award at the federal rate. However, while both provisions are intended to induce payment, the one-time, late payment penalty is different in kind from a post-judgment interest award which accrues in perpetuity until the judgment is satisfied. Further, as noted above, many courts in this District have found that the application of both 28 U.S.C. § 1961 and NYLL §§ 198(4) and 663(4) is not mutually exclusive. *See, e.g., Jacome*, 2021 WL 3375134, at *13; *De la Cruz Casarrubias*, 2021 WL 2227977, at *10, *13). Indeed, New York state courts applying NYLL § 198(4) have not read the provision to supplant the post-judgment interest awarded pursuant to C.P.L.R. § 5004. *See Orser v. Wholesale Fuel Distributors-CT, LLC*, 108 N.Y.S.3d 675, 686–87 (N.Y. Sup. Ct. 2018), *aff'd*, 173 A.D.3d 1519 (N.Y. App. Div. 2019) (simultaneously awarding post-judgment interest pursuant to N.Y. C.P.L.R. § 5004 and imposing the fifteen percent penalty if the judgment remains unpaid after ninety days).

Accordingly, in addition to the post-judgment interest award described above, I respectfully recommend that if the Court's judgment remains unpaid upon the expiration of ninety days following the issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is pending, the total amount of the judgment should automatically increase by fifteen percent.

VI. <u>Attorneys' Fees</u>

Plaintiffs seek $4,802.50 in attorneys' fees. (ECF No. 25-10 ("Fee Record")). For the reasons discussed below I respectfully recommend reducing the attorneys' fees to $4,087.50.

Both the NYLL and FLSA allow prevailing employees to recover costs and "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b); N.Y. Lab. Law § 198. Plaintiffs who are seeking reimbursement of attorney's fees "bear[] the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin*, 93 F. Supp. 3d at 51. "Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney the date the work was done, the hours expended, and the nature of the work done." *Id*. (internal quotation marks and citations omitted).

"Generally, a reasonable rate is determined by multiplying the reasonable numbers of hours spent on a case by a reasonable hourly rate based on the prevailing hourly rate for similarly experienced attorneys in the district in which the court sits." *Santos*, 2022 WL 1003812, at *8. "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Palaghita*, 2021 WL 4464121, at *12 (quoting *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *adopted by* 2020 WL 5259056 (Sept. 3, 2020)).

Here, Plaintiffs request $5,410.50 in attorneys' fees and costs for 14.30 hours of work. (Pl.'s Mem. ¶ 86; Fee Record). The requested attorneys' fees reflect the work of two attorneys, Michael Faillace,[15] and Clela Errington, as well as "Paralegal work" for unnamed paralegals. (Pl.'s Mem. ¶ 84). Mr. Faillace requests a rate of $450 per hour. (*Id*.). He began practicing law in 1983 and has

---

[15] Mr. Faillace withdrew as counsel in this case on December 1, 2021. (ECF No. 17).

ample experience in employment litigation, having served as the "Managing Member" of Michael

Faillace & Associates, P.C., until 2021 (*id*.), when we was "suspended from practice for two years

by the Grievance Committee of the Southern District of New York . . . as a result of repeatedly

taking fees from settlements in excess of the amounts awarded to him by court order (effectively

stealing from his clients' recoveries)" and other egregious conduct. *Garcia Lazaro v. Best Fish

Mkt. Corp.*, No. 21-CV-5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 31, 2022). As in

other fee applications, Plaintiffs' counsel failed to mention this suspension here, only noting that

"No funds will be distributed to Mr. Faillace unless an application is made to the Court on his

behalf, and order is entered to that effect." (Pl.'s Mem. at 14 n. 1). While some Courts in this

District have denied Mr. Faillace's fees, in light of his suspension, *see Best Fish Mkt. Corp.*, 2022

WL 280768, at *2; *Tarax v. Blossom W. Inc.*, No. 19-CV-6228 (JSR), 2022 WL 2132749, at *2

(S.D.N.Y. June 14, 2022), I respectfully recommend following the courts in this Circuit that have

awarded Mr. Faillace fees for work performed before his suspension. *See De Jesus v. P&N Cuisine

Inc.*, No. 20 Civ.3619 (RA) (JW), 2022 WL 3294674, at *1 (S.D.N.Y. Aug. 11, 2022) ("Not only

did Mr. Faillace's work in this case predate his suspension, but Mr. Faillace has left the law firm

that currently represents Plaintiffs, suggesting that he will not receive any portion of the fee award.

Multiple courts have recently awarded fees for work performed by Mr. Faillace under similar

circumstances.") (collecting cases). However, like many other courts in this Circuit, I find the $450

rate requested by Mr. Faillace to be unreasonably high, and respectfully recommend lowering his

rate to $400 per hour. *See Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP),

2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022) (awarding Mr. Faillace attorney's fees but

reducing his rate to $400 per hour); *Calle v. Pizza Palace Cafe LLC*, No. 20 CV 4178 (LDH)(LB),

2022 WL 609142, at *14 (E.D.N.Y. Jan. 4, 2022) (reducing Mr. Faillace's hourly rate to $375);

*Ayala v. P&N Cuisine Inc.*, No. 20 Civ. 03619 (RA) (JW), 2022 WL 3327544, at *6 (S.D.N.Y. July 13, 2022), *adopted by* 2022 WL 3294674 (S.D.N.Y. Aug. 11, 2022) ("In light of this behavior and his suspension, Mr. Faillace's fee is reduced to $300.00.").

Ms. Errington requests a rate of $350 per hour. (Pl.'s Mem. ¶ 84). She is an associate at CSM Legal, P.C., who graduated law school in 2012 and worked in labor and employment law at a number of small firms for an unspecified period before moving to litigation support and then returning to litigation in 2019, after which she joined Michael Faillace & Associates, P.C. in 2020 and CSM Legal, P.C. in 2021. (*Id.*). From the materials provided, it is unclear exactly how much experience Ms. Errington has litigating labor and employment cases. Regardless, "Ms. Errington's hourly rate of $350 exceeds the reasonable hourly rate for senior associates in this district." *Pizza Palace Cafe LLC*, 2022 WL 609142, at *15. As such, I respectfully recommend awarding Ms. Errington $300 per hour in attorney's fees. *See id.* (lowering Ms. Errington's rate to $300 per hour).

As to the paralegal work, Plaintiffs provide no names or qualification for the paralegal or paralegals who performed this work, and request $100 per hour (Pl.'s Mem. ¶ 84) but calculated the paralegal fees using a higher rate in their contemporaneous records (Fee Records). Even $100 per hour is "on the high end of the rates ordinarily awarded to paralegals and other support staff in FLSA cases." *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), *adopted by* 2020 WL 5259056 (Sept. 3, 2020). "Paralegals . . . typically receive an hourly rate of $75 in this district for these types of cases." *Burns v. Nurnberger Corp.*, No. 16-CV-6251(WFK) (ST), 2018 WL 5927575, at *12 (E.D.N.Y. Sept. 17, 2018), *adopted sub nom. by Burns v. Kelly Enterprises of Staten Island, LLC*, 2018 WL 5928106 (Nov. 13, 2018) (collecting cases). As such, I respectfully recommend awarding $75 per

hour for paralegal work. *See Pizza Palace Cafe LLC*, 2022 WL 609142, at *15 ("[C]ounsel does not identify the paralegal or paralegals assigned to this matter and fails to provide any information about their backgrounds. Therefore, I recommend that the paralegal rate be reduced to $75 per hour.").

As to the number of hours worked, 14.30 hours of work is within the range that courts in this District have found reasonable for obtaining a default judgment in an FLSA case. *See Best Fish Mkt. Corp.*, 2022 WL 280768, at *2 ("19.50 hours is a reasonable amount of time to obtain a default judgment" in an FLSA wage-and-hour case); *Pizza Palace Cafe LLC*, 2022 WL 609142, at *15 (finding 12.2 hours reasonable in an FLSA wage-and-hour default judgment). As such, I respectfully recommend awarding attorneys' fees for the 14.3 hours worked at the following rates, for a total of $4,087.50:

| Name | Recommended Rate | Hours Worked[16] | Total Recommended Fees |
|---|---|---|---|
| Michael Faillace | $400/hour | 3.6 | $1,440[17] |
| Clela Errington | $300/hour | 8.2 | $2,460[18] |
| Paralegal(s) | $75/hour | 2.5 | $187.50[19] |
| | | **Total Hours =** 14.3 hours | **Total Recommended Attorneys' Fees =** $4,087.50[20] |

---

[16] The hours worked are provided in the Fee Record.
[17] $400 X 3.6 = $1,440.
[18] $300 X 8.2 = $2,460.
[19] $75 X 2.5 = $187.50.
[20] $1,440 + $2,460 + $187.50 = $4,087.50.

VII.   <u>Costs</u>

Plaintiffs also seek costs totaling $608. (Pl.'s Mem. ¶ 82). These costs include: a $402 filing fee; $78 for a process server for Rene French Cleaners Inc.; $78 for a process server for Rene French Cleaners II Inc.; and $50 for a process server for an unspecified "Individual Defendant". (Fee Record at 3). "Both the FLSA and New York state law provide for an award of costs." *Fermin*, 93 F. Supp. 3d at 52 (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4)). However, plaintiffs must "submit adequate documentary evidence in support" of those costs. *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Here, Plaintiffs have not submitted any receipts or records for their process server fees, and so I respectfully recommend denying those costs. *See id.* (collecting cases and denying process server fees when, as here, "[a]ll [the plaintiffs] have submitted to the Court in support of the service fees is one notation within [p]laintiffs' attorney" contemporaneous billing records classified as 'Service Fee.'"). Unlike service fees, "a court can take judicial notice of the court's filing fee and award it" when the filing fee appears on the docket. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015), *adopted by* 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). A $400 filing fee appears on the docket here. (ECF No. 1). Accordingly,  I respectfully recommend awarding Plaintiffs $400 in costs.

<u>**CONCLUSION**</u>

For the reasons set forth above, I respectfully recommend that the motion be granted in part and denied in part, and that liability be imposed on the Corporate Defendants but denied without prejudice as to Individual Defendants in light of Plaintiffs' noncompliance with Local Rule 55.2(c). Alternatively, should Plaintiff properly serve the Motion for Default Judgment and a copy

of this Report and Recommendation upon the Individual Defendants, and file proof of compliance with Local Rule 55.2(c), I respectfully recommend that the Motion be granted as to all Defendants.

With respect to damages, I respectfully recommend that Diaz be awarded a total of $206,569.07 in damages, comprised of: $33,580.08 in unpaid minimum wages; $32,738.49 in unpaid overtime wages; $14,238.00 in unpaid spread-of-hours wages; $80,556.57 in liquidated damages; $10,000 in statutory damages; $35,455.93 in prejudgment interest; $19.86 per diem until the date that judgment is entered; post-judgment interest in accordance with 28 U.S.C. § 1961; and a fifteen percent increase in the total amount of damages for NYLL violations if the conditions of NYLL § 663(4) are met.

I respectfully recommend that Suarez be awarded $49,200.04, comprised of: $8,607.30 in unpaid minimum wages; $6,281.25 in unpaid overtime wages; $2,512.50 in unpaid spread-of-hours wages; $17,401.05 in liquidated damages; $10,000 in statutory damages; $4,397.94 in prejudgment interest; $4.29 per diem until the date that judgment is entered; post-judgment interest in accordance with 28 U.S.C. § 1961; and a fifteen percent increase in the total amount of damages for NYLL violations if the conditions of NYLL § 663(4) are met..

I further respectfully recommend awarding Plaintiffs $4,087.50 in attorneys' fees and $400 in costs.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Roslynn R. Mauskopf within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 29, 2022
Brooklyn, NY